In re ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Farmers Insurance Exchange, Farmers Texas County Mutual Insurance Company, Mid–Century Insurance Company, Mid–Century Insurance Company of Texas, Progressive Casualty Insurance Company, Progressive County Mutual Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Southeastern Insurance Company, and Progressive Specialty Insurance Company, Relators.

No. 00–1301.

Supreme Court of Texas.

Argued Nov. 7, 2001.

Decided Aug. 29, 2002.

---

47. 945 S.W.2d at 828.

48. *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998).

Howard L. Close, Leanne Johnson, Hollis Horton, Orgain, Bell & Tucker, Beaumont, Thomas T. Rogers, Jackson & Walker, Sean Daniel Jordan, Bell & Murphy, Austin, Reagan M. Brown, Fulbright & Jaworski, Rachel Sue Giesber, Edward B. Adams, Fulbright & Jaworski, LLP, Houston, Lawrence L. Germer, Germer & Gertz, Beaumont, for Relators.

E. Hart Green, Mitchell A. Toups, Weller Green Toups & Terrell, Beaumont, H. Lee Godfrey, Susman Godfrey, Houston, for Respondent.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice O'NEILL and Justice JEFFERSON joined.

The trial court in this case determined that an appraisal provision in a personal automobile insurance policy promulgated by the Texas Department of Insurance is an agreement to arbitrate, and as such, the agreement is unenforceable because it is against public policy. Thus, the trial court refused to enforce the clause. But this provision concerns an appraisal, not arbitration, and is not unenforceable for the reason the trial court gave. Because the trial court abused its discretion and relators have no adequate remedy on appeal, we conditionally grant the writ of mandamus.

I

Plaintiff Terri Shields's car was stolen, and plaintiffs Renita Washington's and Lucilia Hernandez's vehicles were involved in accidents. Their insurance companies, Allstate, Farmers, and Progressive, respectively, determined that the vehicles were total losses and engaged CCC Information Services, Inc., to determine the values of the totaled cars. Plaintiffs allege that the insurance companies directed CCC to fraudulently generate low values for the totaled vehicles, that CCC intentionally un-

dervalued their vehicles, and that the insurance companies thereby offered plaintiffs less than the full values for their vehicles. Washington and Hernandez accepted the insurance companies' offers. Shields has not yet received any compensation under her policy.

The plaintiffs allege that the insurance companies misrepresented their coverage by representing that actual cash value would be paid under the policies, when in fact CCC's and the insurance companies' conduct resulted in inaccurate, unreliable, and biased valuations, and payment of less than full value. Under the plaintiffs' theory, the insurance companies systematically undervalue vehicles, knowing that because of the costly appraisal process the insureds are unlikely to challenge the valuations. Based on these allegations, they pleaded fraud and fraudulent concealment, Texas Deceptive Trade Practices Act and Texas Insurance Code violations, breach of the duty of good faith and fair dealing, breach of contract, and civil conspiracy.

The plaintiffs' insurance policies contain an appraisal clause, which may be invoked by either party, for determining a vehicle's value if the insurer and the insured disagree. Each party hires its own appraiser. If the two appraisers cannot agree on the value, they select an additional appraiser as an umpire, or a district judge will appoint one if the appraisers cannot agree on an umpire. A decision signed by two of the appraisers is binding as to the vehicle's value.

After plaintiffs filed suit, the insurance companies answered and then filed a plea in abatement and motion to invoke appraisal. The trial court denied the motion, finding that the appraisal provision, when considered as an arbitration agreement, was unenforceable. The defendants unsuccessfully sought mandamus relief from the court of appeals. They then petitioned this Court for mandamus relief.

## II

■■■ The trial court's conclusion that the appraisal provision was an arbitration agreement and unenforceable was error. This Court distinguished between appraisal and arbitration clauses over a hundred years ago. In *Scottish Union & National Insurance Co. v. Clancy*, we concluded that while arbitration determines the rights and liabilities of the parties, appraisal merely "binds the parties to have the extent or amount of the loss determined in a particular way." [1] We held that appraisal clauses are enforceable. [2] Texas courts have continued to recognize this distinction, [3] as has the United States Court of Appeals for the Fifth Circuit. [4] And Texas courts have enforced appraisal clauses since that decision. [5]

## III

■■■ "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion" sub-

1. 71 Tex. 5, 8 S.W. 630, 631 (1888).

2. *See id.* at 631–32.

3. *See, e.g., Standard Fire Ins. Co. v. Fraiman,* 514 S.W.2d 343, 344 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ); *Huntington Corp. v. Inwood Constr. Co.,* 348 S.W.2d 442, 444 (Tex.Civ.App.-Dallas 1961, writ ref'd n.r.e.).

4. *Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1061–62 (5th Cir.1990).

5. *See, e.g., Glens Falls Ins. Co. v. Peters,* 386 S.W.2d 529, 532 (Tex.1965); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 451 (Tex.App.-Amarillo 1999, no pet.); *In re Terra Nova Ins. Co.,* 992 S.W.2d 741, 742 (Tex.App.-Texarkana 1999, no pet.); *Standard Fire,* 514 S.W.2d at 345; *see also Hartford Lloyd's,* 898 F.2d at 1063.

ject to correction by writ of mandamus when the relator has no adequate remedy by appeal.[6] We hold that the trial court abused its discretion by determining that the appraisal clause in the plaintiffs' policies was an arbitration clause and unenforceable. But before issuing mandamus, we must determine whether relator has an adequate appellate remedy.

In an analogous situation, we have held that denial of discovery "going to the heart of a party's case may render the appellate remedy inadequate."[7] As to the plaintiffs' breach of contract claim, the parties have agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred. That is, if the appraisal determines that the vehicle's full value is what the insurance company offered, there would be no breach of contract. Accordingly, at a minimum, denying the appraisals will vitiate the defendants' ability to defend the breach of contract claim. Because the appraisals go to the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims.

In *Walker v. Packer*, this Court reaffirmed the principle that "an appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error."[8] A refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim. We conclude

that the failure to order the appraisals will vitiate or severely compromise the defendants' defenses to those claims.[9]

## IV

The parties in this case contracted for an appraisal if they disagreed about the damaged property's value. Texas courts have distinguished between appraisal and arbitration for over a hundred years. And they have enforced appraisal provisions over that same length of time. Under Texas law, the trial court's conclusion that the appraisal clause was one for arbitration and unenforceable was an error of law, constituting an abuse of discretion. That abuse of discretion denies the development of proof going to the heart of a party's case and cannot be remedied by appeal. Accordingly, we conditionally grant mandamus relief.

While the trial court's denial of the motion to invoke appraisal was error, the failure to grant the motion to abate is not subject to mandamus.[10] In any event, the proceedings need not be abated while the appraisal goes forward. While the trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal.[11] We trust that the trial court will comply with this opinion; the writ will issue only if it fails to do so.

Justice BAKER filed a dissenting opinion, in which Justice HANKINSON joined.

Justice RODRIGUEZ did not participate in the decision.

---

**6.** *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

**7.** *Id.* at 843.

**8.** *Id.*

**9.** *See, e.g., id.; Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex.1995).

**10.** *See Abor v. Black*, 695 S.W.2d 564, 567 (Tex.1985).

**11.** *See, e.g., In re Terra Nova*, 992 S.W.2d at 742.

Justice BAKER filed a dissenting opinion, in which Justice HANKINSON joined.

Once again, the Court ignores established mandamus precedent and rolls back the clock to a time before our decision in *Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992). Here, I agree with the Court that the trial court abused its discretion when it determined that the appraisal clause is an unenforceable arbitration agreement. But, once again, I cannot agree that an appeal is inadequate and that mandamus relief is warranted. Because the Court ignores *Walker's* express requirement that the insurance companies ("Allstate") establish an inadequate appellate remedy to obtain mandamus relief, I dissent.

## I. ADEQUATE REMEDY AT LAW—APPEAL

A writ of mandamus will issue "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). This Court has long recognized that we may not issue mandamus relief when the law provides another plain, adequate, and complete remedy. *See Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648, 652 (Tex.1958). The requirement that a person seeking mandamus relief establish the lack of an adequate appellate remedy is a "fundamental tenet" of mandamus practice. *Walker*, 827 S.W.2d at 840. As the Court has repeatedly stated, mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *Walker*, 827 S.W.2d at 840. An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining mandamus relief. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996); *Walker*, 827 S.W.2d at 842. Because man-

damus is an extraordinary remedy, this Court may not issue mandamus to supervise or correct a trial court's incidental rulings when there is an adequate remedy at law, such as a normal appeal. *See Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 306 (Tex.1994); *Walker*, 827 S.W.2d at 839–40.

## II. ANALYSIS

Missing from the Court's opinion is an accurate description of the plaintiffs' claims in this case. The plaintiffs have sued Allstate for fraud, fraudulent concealment, violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code, breach of the duty of good faith and fair dealing, civil conspiracy, and breach of contract. The plaintiffs' allegations underlying all these claims—including the breach of contract claim that the Court solely relies upon for granting mandamus—relate to how Allstate and the appraisal company it employs, CCC Information Services, value cars before Allstate initially offers a cash settlement for a covered loss. The plaintiffs' pleadings contend that Allstate, in concert with CCC Information Services, systematically undervalues cars at the initial valuation stage and offers this low amount knowing that the initial valuations "are inaccurate, unreliable, and biased toward generating valuation reports well below the actual cash value or replacement cost" and anticipating that claimants will not bother disputing the offer. The plaintiffs argue that Allstate's conduct is fraudulent and constitutes a breach of its agreement to pay cash value for covered losses at the initial valuation stage.

Refusing to acknowledge the nature of the plaintiffs' claims, in a remarkably terse discussion, the Court holds that Allstate does not have an adequate appellate remedy from the trial court's erroneous deci-

sion that the appraisal clause is an unenforceable arbitration provision. The Court concludes that the trial court's order is analogous to an order denying discovery "'going to the heart of a party's case.'" 85 S.W.3d at 196 (quoting *Walker*, 827 S.W.2d at 843). The Court explains that this is because "the parties have agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred." 85 S.W.3d at 196. According to the Court, the trial court's refusal to enforce the appraisal provision will vitiate Allstate's defenses, because it prevents Allstate from "obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim." 85 S.W.3d at 196.

In determining that the trial court's order denying the appraisals would vitiate or severely compromise Allstate's defenses, the Court relies on *Walker*. 85 S.W.3d at 196. In *Walker*, we held that, in the discovery context, "an appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error." *Walker*, 827 S.W.2d at 843. Thus, whether the excluded discovery goes to the heart of the party's case so that appellate relief is inadequate is pertinent. *See Walker*, 827 S.W.2d at 843; *Jampole v. Touchy*, 673 S.W.2d 569, 576 (Tex.1984). But, still, the relator must "establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources." *Walker*, 827 S.W.2d at 843. Otherwise, the relator has not shown that the trial court's error vitiated a viable claim or defense so that no adequate appellate remedy exists. *Walker*, 827 S.W.2d at 843.

Here, the Court's position is that no adequate appellate remedy exists, because Allstate's defenses to the plaintiffs' breach of contract allegations turn on whether Allstate did in fact undervalue the plaintiffs' cars at the initial valuation stage. According to the Court, "if the appraisal determines that the vehicle's full value is what the insurance company [initially] offered, there would be no breach of contract." 85 S.W.3d at 196. But the Court's analysis entirely ignores that the plaintiffs do not simply seek to recover the value for their particular losses, which is all that the appraisal process will produce. Rather, the plaintiffs seek damages arising from Allstate's alleged fraud, statutory violations, and breach of contract. And, as discussed above, all these claims relate to how Allstate values car losses or damages at the initial valuation and offer stage. In other words, the plaintiffs challenge the initial valuation process—that is, how Allstate values cars at that stage and whether Allstate breaches its obligation to pay cash value at that stage.

Moreover, the Court's unfounded belief that the appraisal valuations will finally resolve whether Allstate breached its contractual obligation to pay cash value for losses or damage at the initial valuation stage demonstrates a fundamental misunderstanding not only about our case law involving insurance contract appraisal provisions, but also about when the Court has authority to issue mandamus relief. First, long ago, this Court rejected the position that an appraisal's outcome establishes liability when we held that, unlike an arbitration provision, an appraisal provision "only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts." *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (Tex.1888); *see also Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 797–98 (Tex.App.-Amarillo 1995, writ denied). Thus, the Court's writing impermissibly

and incorrectly advises Allstate about how it may successfully defend against the breach of contract claim.

Second, the Court's cursory conclusion that the appraisal valuations are dispositive of the plaintiffs' breach of contract claim disregards that Allstate can otherwise develop defenses to the plaintiffs' breach of contract allegations. The Court simply assumes, without analysis or explanation, that the trial court's order refusing to enforce the appraisal provision vitiates or severely compromises Allstate's ability to defend itself against the plaintiffs' breach of contract claim. However, other than the Court's wholly advisory writing, there is absolutely no indication that the appraisal process' outcome is the only means by which Allstate can develop its contractual defenses. Allstate has not demonstrated that it lacks other reasonable opportunities to develop evidence about the cars' values to counter the plaintiffs' allegations about Allstate's breach of its obligation to pay cash value at the initial valuation process. *See Walker*, 827 S.W.2d at 843. Indeed, even if appraisals would provide evidence to refute the plaintiffs' claim that Allstate breached its obligation to pay cash value or replacement cost, as the Court asserts, the Court wholly ignores that Allstate can obtain information about the initial valuation process and the cars' values through other means.

For example, Allstate can obtain expert testimony about the valuation process and about the actual losses to counter the plaintiffs' allegations. Thus, the trial court's order is nothing more than an incidental ruling that does not deny Allstate a reasonable opportunity to develop its defenses against the plaintiffs' claims. Moreover, because the cars' values can be established through other means, the appraisal process is certainly not dispositive on whether Allstate breached its agreement to pay actual value for covered losses or whether Allstate systematically acted fraudulently during the initial valuation process.

Furthermore, in granting mandamus relief because the appraisal valuations will counter at least one of the plaintiffs' claims, the Court parses the breach of contract claim from the plaintiffs' other claims. In doing so, the Court recognizes that the erroneous order does not compromise Allstate's defenses to the fraud-based claims. However, even assuming the Court has authority to grant mandamus relief based on an order's purported effect on one of the several underlying claims, the Court's decision to do so here is based on its faulty assumption that the breach of contract claim necessitates the appraisal process. Instead, the plaintiffs' pleadings demonstrate that the plaintiffs' breach of contract claim is that Allstate breached its agreement to pay cash value for covered losses during the initial valuation stage; no allegations underlying the breach of contract claim refer to Allstate's duty under the appraisal provision. The Court cites no authority—and I find none that exists—for its conclusion that the appraisal process' outcome is entirely dispositive of the breach of contract claim here. Further, there is no authority for the Court's assumption that Allstate cannot defend itself against the breach of contract claim through other means. Because Allstate has not established that the trial court's order vitiates its defenses so that trial would be a waste of judicial resources, an adequate appellate remedy exists. *See Walker*, 827 S.W.2d at 843. Therefore, the Court must deny mandamus relief.

Ultimately, the trial court's order refusing to enforce the appraisal provisions is, in light of the plaintiffs' claims against Allstate, an incidental ruling. As the Court acknowledges, it is well settled in

Texas that insurance contract appraisal provisions are typically enforceable. *Clancy*, 8 S.W. at 631. Since 1888, when we decided *Clancy*, our courts of appeals have consistently and correctly applied Texas law on appraisal clauses on ordinary appeal.[1] Consequently, well-established Texas authority demonstrates that the trial court's refusal to enforce the appraisal clause can be readily corrected, if necessary, on appeal.

## III. THE ROAD OF NO RETURN ... ONCE AGAIN

"Yesterday ... I believe in yesterday."

Lennon/McCartney

The Court obviously believes in yesterday, because its opinion revives a concept we expressly disapproved in *Walker v. Packer*. The law clearly establishes that appraisal clauses are not analogous to unenforceable arbitration provisions. Thus, this case involves a trial court's erroneous decision about a settled legal question for which an appeal is readily available. In order to justify mandamus here, the Court, while skillfully avoiding saying so, revives the more lenient mandamus standard first articulated in *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1068 (1926), that the remedy by appeal must be "equally convenient, beneficial, and effective as manda-

mus." Therefore, the Court's real purpose is to avoid making the parties go through the time and expense of a trial on its merits and then appeal the trial court's decision. In *Walker*, we expressly held that this is no longer a valid reason for concluding appellate relief is inadequate. *Walker*, 827 S.W.2d at 842 (disapproving *Cleveland*, *Jampole*, and any other authority to the extent they implied that a remedy by appeal is inadequate merely because it might involve more delay or cost than mandamus).

Today, the Court's opinion returns us to this disfavored doctrine and will cause appellate courts to "embroil themselves unnecessarily in incidental pre-trial rulings of the trial courts." *Walker*, 827 S.W.2d at 842 (quoting *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991)). Because the Court continues to lead us down this Road of No Return, I dissent.

1. *See, e.g., Glens Falls Ins. Co. v. Peters*, 386 S.W.2d 529, 532 (Tex.1965); *Export Ins. Co. v. Axe*, 58 S.W.2d 39, 40 (Tex. Com.App.1933, holding approved); *Pennsylvania Fire Ins. Co. v. W.T. Waggoner Estate*, 39 S.W.2d 593, 595 (Tex.Com.App.1931); *American Cent. Ins. Co. v. Terry*, 26 S.W.2d 162, 166 (Tex. Com.App. 1930, holding approved); *In re Terra Nova Ins. Co.*, 992 S.W.2d 741, 742 (Tex.App.-Texarkana 1999) (orig.proceeding); *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 799 (Tex. App.-Amarillo 1995, writ denied); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 878–79 (Tex.App.-San Antonio 1994, no writ); *Barnes v. Western*

*Alliance Ins. Co.*, 844 S.W.2d 264, 268–69 (Tex.App.-Fort Worth 1992, writ dism'd by agr.); *American Cent. Ins. Co. v. Terry*, 298 S.W. 658, 659–660 (Tex.Civ.App.-Texarkana 1927, no writ); *Boston Ins. Co. v. Kirby*, 281 S.W. 275, 276 (Tex.Civ.App.1926, no writ); *Aetna Ins. Co. v. Shacklett*, 57 S.W. 583, 583 (Tex.Civ.App.1900, no writ); *American Fire Ins. Co. v. Stuart*, 38 S.W. 395, 395 (Tex.Civ. App.1896, no writ); *Manchester Fire Ins. Co. v. Simmons*, 12 Tex.Civ.App. 607, 35 S.W. 722, 724 (1896, writ ref'd); *see also Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir.1990).