

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00263-CV

## IN RE CERTAIN UNDERWRITERS AT LLOYDS

_____

## Original Proceeding

_____

## MEMORANDUM  OPINION

_____

Relator, Certain Underwriters at Lloyds, filed a petition for writ of mandamus, arguing that the trial court abused its discretion by:  (1) refusing to enforce a valid appraisal clause contained in the contract between relator and real parties in interest, Mittie and Henry Anderson; and (2) denying objections to discovery that allegedly was unduly burdensome and abusive.  Through this original proceeding, relator requests that we grant them mandamus relief and direct the trial court to vacate its order denying appraisal and ordering discovery.  For the reasons stated herein, we conditionally grant the writ, in part, and deny, in part.

# I. BACKGROUND

## A. The Andersons' Claim

This case involves an insurance claim made by the Andersons with regard to their house located in New Waverly, Texas, which was damaged as a result of Hurricane Ike on September 13, 2008. The Andersons allege that the roof of their house sustained extensive damage and that water damaged the ceilings, walls, insulation, and flooring of the house. The Andersons further allege that, immediately after the storm, they filed a claim with relator, their insurance company. Thereafter, relator sent an adjustor to the Andersons' home to inspect the damage. The Andersons note that the adjustor only spent ten to fifteen minutes at the house and did not get on the roof. Upset by what they perceived as an inadequate inspection, the Andersons called relator and requested that a different adjuster inspect the property. The Andersons' property was re-inspected, and the adjustor concluded that the extent of the damage to the property did not exceed the $750 deductible associated with the homeowner's policy covering the house. As a result, relator informed the Andersons that no payment would be made on their claim because the damages did not exceed the deductible.[1] In a letter dated December 5, 2008, relator told the Andersons:

> If you disagree with or have a question about the enclosed property damage estimate, please call Quality Claims Service. Should you have any questions concerning the above, or if you have any additional information that would help Certain Underwriters at Lloyds re-evaluate your claim, please do not hesitate to call.

[1] Relator determined that the only damage sustained by the Andersons' property was to a storm door and estimated that the replacement cost for the damage sustained would be $158.49 with an actual cash value of $130.23 once $28.26 in depreciation was deducted.

In response to relator's December 5, 2008 letter, the Andersons repeatedly called "to complain about the adjuster's poor investigation of [their] damages and [their] disagreement with [relator's] estimate of the claim." In an affidavit, Mittie averred that:

> The . . . representative said that there was nothing more that could be done with my claim and that my estimate included the only damage amount I was entitled to. When I asked to speak to a manager, the representative told me that she was the owner of the business along with her husband, that her decision was final, and that the claim would remain closed. During the next few weeks I called . . . again to demand a re-inspection of my home with a different adjuster, but I was told that the evaluation of my claim was final and that my file would remain closed. . . . In sum, starting upon receipt of the denial letter and continuing through the next couple months, I consistently made it clear . . . that I was disputing the amount of my damages, but [relator] [n]ever did anything to reconcile our differences.
>
>      . . . .
>
> Despite my several attempts to inform them of the inadequacies of their investigation, [relator] never sent another adjuster, an engineer, or any payments for damages to my home. My husband and I ended up using the money in our savings account we saved in case of an emergency to pay for repairs that should have been covered under our homeowner's insurance policy.

Relator asserts that, after the initial inspection, the Andersons never provided information to them showing additional covered damages, which would have required a re-evaluation of the claim. Nevertheless, after complaining for a couple months from the time the claim was made, the Andersons ceased all communications with relator for a period of approximately two years until they filed this lawsuit, which relator alleges was done without providing notice, though required by section 541.154 of the insurance code. *See* TEX. INS. CODE ANN. § 541.154 (West 2009).

## B.  The Lawsuit and Appraisal Request

In their lawsuit, which was filed on August 25, 2010, the Andersons asserted causes of action against relator for:  (1) violations of the insurance code, including unfair settlement practices and the failure to promptly pay claims; (2) fraud; (3) conspiracy to commit fraud; (4) breach of contract; and (5) breach of the duty of good faith and fair dealing.  In their original answer and in a separate motion to compel, relator requested that the proceedings be abated and that the matter be sent to appraisal, as allowed by the underlying homeowner's insurance policy.[2]  Specifically, the policy provided:

> **8.  Appraisal**.  If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal.  Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers will choose an umpire. If they cannot agree on an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred.  The two appraisers will then set the amount of loss, stating separately the actually [sic] cash value and loss to each item.
>
> If the appraisers fail to agree, they will submit their differences to the umpire.  An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss.  Such award shall be binding on you and us.
>
> Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.
>
> . . . .
>
> **12.  Suit Against Us.**  No suit or action can be brought unless the policy provisions have been complied with.  Action brought against us must be started within two years and one day after the cause of action accrues.

---

[2] On September 8, 2010, less than two weeks after the Andersons filed suit, relator sent the Andersons a letter formally requesting appraisal pursuant to paragraph 8 of the underlying homeowner's insurance policy.

. . . .

**18. Waiver or Change of Policy Provisions.** Changes in this policy may be made and perils insured against added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

(Emphasis in original). The Andersons responded to relator's request for appraisal by arguing that the request had been waived.

On November 8, 2010, the trial court denied relator's appraisal request. However, after the trial court denied relator's appraisal request, the Texas Supreme Court issued its opinion in *In re Universal Underwriters of Texas Insurance Company*, which, as relator asserts, requires the trial court to grant its request for appraisal. *See* 2011 Tex. LEXIS 357 (Tex. May 6, 2011). In light of the *Universal Underwriters* decision, relator moved the trial court to re-hear its motion to compel appraisal. In response, the Andersons once again argued waiver. Thereafter, on June 15, 2011, the trial court again denied relator's motion to compel appraisal.

## C. Discovery Issues

After filing their lawsuit, the Andersons propounded discovery requests on relator. In response to the requests, relator produced the claim file and underwriting file pertinent to the Andersons' insurance policy and to the adjustment of their claim. However, realtor notes that the Andersons sought additional information from them, including: (1) adjusters' personnel files; (2) material provided to appraisers in other losses; (3) criteria used to qualify persons for an approved vendors list; (4) copies of job

descriptions of adjusters; and (5) claims from other losses beyond Hurricane Ike. Relator objected to the production of the above-mentioned information on various grounds to which the Andersons responded by filing a motion to compel. Realtor states that, on June 15, 2011, the trial court overruled its discovery objections and granted the Andersons' motion to compel. Relator further states that it was ordered to respond to the Andersons' discovery requests by July 15, 2011. However, relator does not direct us to a trial court order specifically requiring relator to provide the information they complain about.

## D. The Mandamus

On July 14, 2011, relator filed a petition for writ of mandamus in this Court. Accompanying its mandamus petition was an emergency motion to stay the trial court proceedings. Upon receiving the filings, we granted relator's emergency motion to stay the trial court proceedings and requested a response. The Andersons filed a response to relator's petition on September 2, 2011.

In this original proceeding, relator argues that the trial court abused its discretion: (1) in denying appraisal; and (2) by ordering "responses to discovery that is overbroad on its face, unduly burdensome, and abusive."

## II. STANDARD OF REVIEW

Mandamus is an "extraordinary" remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding); *see In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). To obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy

by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show that the trial court could "'reasonably have reached only one decision.'" *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (quoting *Walker*, 827 S.W.2d at 840).

Historically, mandamus was treated as an extraordinary writ that would issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker*, 827 S.W.2d at 840. Now, whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 462. Sometimes, "[a]n appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. According to the Texas Supreme Court:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.*

### III.    THE APPRAISAL CLAUSE

In their first issue, relator contends that the trial court clearly abused its discretion in light of the recent *Universal Underwriters* case because the Andersons failed to prove that relator unreasonably delayed invoking appraisal after knowing an impasse had been reached and that the Andersons suffered prejudice because of the alleged delay in requesting appraisal. *See generally In re Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS 357. The Andersons counter that mandamus is unavailable to resolve disputed factual issues that were presented to the trial court. In addition, the Andersons assert that the trial court did not abuse its discretion in determining that an impasse had occurred; that relator waived its right to compel appraisal; and that relator unreasonably delayed the invocation of its appraisal rights.

### A.  Applicable Law

#### 1.  Appraisal Clauses

"Today, appraisal clauses are uniformly included in most forms of property insurance policies. Virtually every property insurance policy for both homeowners and corporations contains a provision specifying 'appraisal' as a means of resolving disputes about the 'amount of loss' for a covered claim." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888-89 (Tex. 2009) (internal quotations & footnotes omitted). The *Johnson* court further explained the appraisal process as follows:

> First, appraisal is intended to take place before suit is filed; this
> Court and others have held it is a condition precedent to suit. Appraisals

require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings. It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it. Allowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change in Texas insurance practice, and surely encourage much more of the same.

Second, in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions. As already noted, when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

Third, the scant precedent involving disputes about the scope of appraisal suggests that appraisals generally resolve such disputes. The final appraisal award here may substantiate State Farm's claims that only the ridgeline suffered hail damage, or reach some in-between figure that proves acceptable to all concerned. Litigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle this controversy.

Finally, even if an appraisal award is flawed, that can be easily remedied by disregarding it later. Thus, when insureds objected to appraisal procedures that were allegedly "inaccurate, unreliable, and biased," we held in 2002 that the appraisal should go forward and the results could be challenged later if the insureds were dissatisfied. If an appraisal is not an honest assessment of necessary repairs, that can be proved at trial and the award set aside.

*Id.* at 894-95. In addition, the supreme court has recently stated the following:

Appraisal clauses, commonly found in homeowners, automobile, and property policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim. These clauses are generally enforceable, absent illegality or waiver.[3] Appraisals can provide a less expensive, more efficient alternative to

---

[3] In *Scottish Union & National Insurance Company v. Clancy*, the supreme court enforced an appraisal clause and stated that:

litigation, and we recently held that they should generally go forward without preemptive intervention by the courts.

*In re Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS 357, at **6-7 (internal citations & quotation marks omitted). Furthermore, "[w]hile trial courts have some discretion as to the timing of an appraisal, they have no discretion to ignore a valid appraisal clause entirely." *Johnson*, 290 S.W.3d at 888 (citing *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002)).

## 2. Waiver of the Appraisal Clause

Though appraisals have proceeded for well over a century with little judicial involvement, in rare cases, a court may conclude that a party has waived its right to enforce the appraisal provision. *See In re Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS 357, at *7 (citing *Del. Underwriters v. Brock*, 109 Tex. 425, 211 S.W. 779, 780-81 (Tex. 1919) (finding waiver due to insurer's selection of a biased arbitrator, which violated the underlying insurance policy); *Am. Cent. Ins. Co. v. Bass*, 90 Tex. 380, 38 S.W. 1119, 1119-20 (Tex. 1897) (same); *Scottish Union*, 8 S.W.at 632 (finding no waiver)).

> "[To] constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss."

---

> However injudicious it may be for parties to bind themselves by such agreement, it seems to be well settled that, having done so, they cannot disregard it . . . . In the absence of fraud, accident, or mistake, the parties having agreed that the amount of loss shall be determined in a particular way, we are constrained to hold that such stipulation is valid.

71 Tex. 5, 8 S.W. 630, 631 (Tex. 1888). The *Scottish Union* court also drew a distinction between appraisal provisions and arbitration clauses—noting that while arbitration determines the rights and liability of the parties, appraisal merely "binds the parties to have the extent or amount of the loss determined in a particular way." *Id.*; *see In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002).

*Id.* (quoting *Scottish Union*, 8 S.W. at 632). Or, in other words, "'[w]aiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Id.* at *8 (quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)).

### 3. Delay, Impasse, and Waiver

"[W]hile the time period may be instructive in interpreting the parties' intentions, it alone is not the standard by which courts determine the reasonableness of a delay." *Id.* at *10. Reasonableness of a delay is measured from the point of impasse. *Id.* at *11.

> An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal. Nor does an insurer's offer of money to cover damages necessarily indicate a refusal to negotiate further, or to recognize additional damages upon reinspection.

*Id.* at *12 (citing *Scottish Union*, 8 S.W. at 632.).

In determining the "point of impasse" in insurance negotiations, Texas courts, including the supreme court, have looked to a federal district court case from Iowa. *Id.*; *see Laas v. State Farm Mut. Auto Ins. Co.*, No. 14-98-00488-CV, 2000 Tex. App. LEXIS 5332, at **16-18 (Tex. App.—Houston [14th Dist.] Aug. 10, 2000, no pet.) (not designated for publication); *see also Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 981 F. Supp. 581 (N.D. Iowa 1997). The *Terra* court looked to see at what point an insurer waived its appraisal right and formulated the following factors to consider:

> In deciding whether a demand for appraisal was made within a reasonable time, and consequently has not been waived even if suit was filed before the demand was made, courts have considered the timeliness

of the demand in light of the circumstances as they existed at the time the demand was made. Pertinent circumstances include (1) the time between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand; and (2) whether there would be any prejudice to the other party resulting from the delay in demanding an appraisal.

981 F. Supp. at 602 (citation omitted).[4] Moreover, the supreme court noted that "[u]sing the point of 'impasse,' rather than the first sign of disagreement, corresponds with our definition of waiver as an 'intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *In re Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS at *14 (quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316). "In other words, both parties must be aware that further negotiations would be futile, 'or would be of no effect if performed.'" *Id.* (quoting *Scottish Union*, 8 S.W. at 632). "If one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal (unless it expressly waives it)." *Id.*

### 4. Prejudice

The supreme court further emphasized that delay alone is not enough to prove waiver; a party must also demonstrate prejudice. *Id.* at **18-23. "If the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." *Id.* at *19. "Of

---

[4] As noted by the supreme court in *Universal Underwriters of Texas Insurance Company*, the dispute in *Terra* involved two-and-a-half years of negotiations and an "evident dispute." 2011 Tex. LEXIS 357, at *13 (citing *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 981 F. Supp. 581, 603 (N.D. Iowa 1997)). The *Terra* court found that the insurer "had no notice that an impasse had been reached, because only the filing of [the insured]'s suit demonstrated [the insured]'s unilateral conclusion that the parties were at an impasse." *Id.* (citing *Terra Indus., Inc.*, 981 F. Supp. at 603).

course, prejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position." *Id.* However, the supreme court noted that:

> *it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.*

*Id.* at *23 (emphasis added). In sum, "[i]n order to establish waiver, therefore, a party must show that an impasse was reached, and that any failure to demand appraisal within a reasonable time prejudiced the opposing party." *Id.* at *22.

## B. Discussion

In the present case, the trial court, at the June 15, 2011 hearing, concluded that an impasse had occurred shortly after the relator's December 2008 letter, even though the letter stated that the Andersons could submit additional information for further consideration. In arriving at its conclusion, the trial court cited the allegations contained in Mittie's affidavit, which provided that relator told her that there was nothing more that could be done and that the file was closed. The trial court also indicated that the delay and the fact that the Andersons had already made some repairs to the property demonstrated sufficient prejudice. The trial court subsequently signed the order denying relator's motion to reconsider enforcing the appraisal clause.

In this original proceeding, relator specifically argues that the Andersons "failed to show the existence of a known impasse, as Underwriters always showed a willingness to review new information"; that the Andersons "failed to show that Underwriters unreasonably delayed in invoking appraisal once Underwriters became

aware of any impasse"; and that the trial court's finding of waiver "eviscerate[s] not just the insurance contract's appraisal clause, but also its anti-waiver clause."

In arguing that the parties were at an impasse in December 2008, the Andersons relied on Mittie's affidavit wherein she stated that she was told by relator that the claim was closed and would not be reopened. Mittie's statements are undermined by the letter sent by relator on December 5, 2008, to the Andersons, which did not specifically state that the claim was closed and, instead, invited the Andersons to submit additional information to support a re-evaluation and further negotiation of the claim. Relator concluded that it was responsible for replacing a storm door on the Andersons' property, rather than denying liability altogether. The damage sustained to the Andersons' property was less than the deductible associated with the Andersons' homeowner's policy, which did not warrant a payment from relator. But, the December 5, 2008 letter indicates that relator was willing to re-consider the claim in light of new information provided by the Andersons, which was never provided. A review of the record supports a finding that, in December 2008, the parties merely disagreed about the amount of loss. *See id.* at *12 (noting that an impasse is not the same as a disagreement about the amount of loss); *see also Scottish Union*, 8 S.W. at 632.

The first indication by either of the parties of an impasse, or the point when further negotiations were futile, was when the Andersons filed suit, approximately two years after the parties last communicated. *See Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS 357, at *14 (defining impasse as the point when *both* parties are "aware that further negotiations would be futile, 'or would be of no effect if performed'")

(quoting *Scottish Union*, 8 S.W. at 632); *see also Beverly Farm Found. v. NLRB*, 144 F.3d 1048, 1052 (7th Cir. 1998) ("The touch-stone for determining whether a genuine 'impasse' or 'deadlock' existed . . . is the absence of any realistic possibility that continuation of the negotiations would have been fruitful."); *Terra Indus., Inc.*, 981 F. Supp. at 603. Less than two weeks after the Andersons unilaterally indicated that an impasse had been reached by filing suit without giving the required notice, relator invoked its right to appraisal. *See id.* (citing *Keesling v. W. Fire Ins. Co.*, 10 Wash. App. 841, 520 P.2d 622, 627 (Wash Ct. App. 1974) (finding no waiver where, "insofar as the record shows, until the insured filed suit, the frame of mind of both parties welcomed additional communications and negotiations rather than confrontation")). Based on the record before us, we find that relator did not unreasonably delay in the invocation of its appraisal rights once it became aware that the parties were, indeed, at an impasse.

Moreover, there is no more than a scintilla of evidence in the record demonstrating any prejudice on the Andersons. In her affidavit, Mittie merely states that money was taken from the couple's savings account to make repairs to the property. We do not know what repairs were made, nor do we know the amount of money expended to make the repairs. Rather, we are left to speculate about the extent of the repairs. Such speculation cannot possibly serve to adequately prove prejudice, especially in light of the supreme court's repeated endorsement of the appraisal process to handle disagreements about the amount of loss. *See Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) ("'When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more

than a scintilla and, in legal effect, is no evidence.'") (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *see also In re Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS 357, at **6-7; *Johnson*, 290 S.W.3d at 888-95; *Scottish Union*, 8 S.W. at 631-32.

In any event, the Andersons rely heavily on the decision in *In re Acadia Insurance Company* in advancing their main waiver arguments—that waiver requires a fact determination by the trial court and that mandamus is unavailable to resolve disputed factual issues presented to the trial court. *See* 279 S.W.3d 777 (Tex. App.—Amarillo 2007, no pet.) (noting that the determination of whether a right has been waived is a question of fact for the trier of fact)[5]; *see also Rodriguez v. Classical Custom Homes, Inc.*, 176 S.W.3d 928, 932 (Tex. App.—Dallas 2005, no pet.) (same). However, an analysis of the Andersons' waiver argument necessarily requires that we examine and interpret the terms of the insurance policy, which constitutes a question of law for the courts to

---

[5] In *Acadia Insurance Company*, the insurer denied all liability on the basis that the property damage predated the inception of the insurance policy. 279 S.W.3d 777, 778-79 (Tex. App.—Amarillo 2007, no pet.). When the insured sued, the insurer invoked the policy's appraisal clause. *Id.* at 779. The Amarillo Court of Appeals denied a writ of mandamus and held that the trial court did not abuse its discretion in denying appraisal because the insurer "intentionally and unequivocally relinquished the right [to an appraisal] so that it could challenge coverage and, thus, waived that right." *Id.* at 780.

This case, however, is factually distinguishable from *Acadia Insurance Company*—a case where the insurer denied all coverage for the claims under the policy. In *State Farm Lloyds v. Johnson*, the supreme court stated that an insurer may dispute the extent of coverage and deny certain claims without waiving the right to appraisal. *See* 290 S.W.3d 886, 893-95 (Tex. 2009) (holding that an insurer could not "avoid appraisal . . . merely because there might be a causation question that exceeds the scope of appraisal"; noting that appraisers can "decide the cost to repair each [loss] without deciding who must pay for it"; and "unless 'the amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts"). Here, relator did not deny coverage. They admitted that they were responsible for repairing a storm door; however, because the damages were determined to be less in value than the deductible, no payment was made. In other words, relator did not challenge liability in this matter, nor did they deny coverage for all claims. They invited the Andersons to provide additional information to warrant a re-inspection and possibly a payment, if the value of the repairs needed exceeded the deductible. At its very core, this is a dispute about the amount of loss, which is different from the fact scenario in *Acadia Insurance Company*.

decide. *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) (holding that insurance policies are controlled by rules of interpretation and construction generally applicable to contracts); *see also MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999) (stating that the interpretation of an unambiguous contract is a question of law, which is reviewed de novo).

The principles courts use when interpreting an insurance policy are well established. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Those principles include construing the policy according to general rules of contract construction to ascertain the parties' intent. *Id.* We examine the language of the policy because we presume that the language of the contract reflects the intentions of the parties, and we review the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. *Id.* Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it. *Id.*; *see Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008).

At the outset, we note that the parties contracted for an appraisal if they disagreed about the damaged property's value. The underlying policy contains several paragraphs which are relevant to the Andersons' waiver argument. First, paragraph 12 establishes that all of the provisions of the policy are conditions precedent before filing suit against relator. *See Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) ("Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to

immediate performance and before there is a breach of contractual duty."). As such, the Andersons are not allowed to bring suit against relator unless all of the other policy provisions, including the appraisal provision, have been satisfied. Second, paragraph 18 of the policy strictly prohibits a waiver finding unless the policy otherwise provides for the waiver of a provision. The parties do not direct us to any provisions that contradict paragraph 18 and expressly allow for the waiver of appraisal.

When interpreting a contract, a court cannot use parol evidence to alter the terms of the agreement. *See Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995) ("Parol evidence is not admissible for the purpose of creating an ambiguity. Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation . . . and admit extraneous evidence to determine the true meaning of the instrument."). Mittie's conclusory affidavit constituted parol evidence which had the effect of altering the terms of the policy to which the parties had agreed.

However, the Andersons contend that we may not consider the anti-waiver provision of the policy because it was not presented to the trial court. We are not persuaded by this argument. The record reflects that the policy was before the trial court and presumably was considered by the trial court when the appraisal issue was considered. Perhaps more importantly, the resolution of this issue necessarily requires us to examine and interpret the language of the policy in its entirety. And, as noted above, our review of the policy is de novo, and we are to construe the policy so that no terms of the agreement are rendered meaningless or superfluous. *See MCI Telecomms. Corp.*, 995 S.W.2d at 650-51; *see also Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126. We do

not believe that the trial court had the discretion to ignore the provisions of the policy that the parties had agreed to and, instead, use Mittie's affidavit to alter the terms of the agreement.

Based on the unambiguous language of the policy, the issue of waiver is immaterial because the underlying homeowner's insurance policy does not allow for it. Moreover, the record neither demonstrates that relator unreasonably delayed in the invocation of its right to appraisal, nor that the Andersons were prejudiced by any perceived delay in the invocation of appraisal. As a result, we reject the Andersons' argument that the trial court's waiver finding precludes mandamus.

Based on the foregoing, we conclude that relator has shown that the trial court clearly abused its discretion by: (1) failing to enforce the appraisal clause of the underlying homeowner's insurance policy; and (2) concluding that relator had waived this right. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision.") (citing *Scottish Union*, 18 S.W. at 440). The parties do not dispute whether relator has an adequate remedy at law, and, according to the supreme court, "'mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim.'" *In re Universal Underwriters of Tex. Ins. Co.*, 2011 Tex. LEXIS 357, at *23 (quoting *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d at 196 (holding that refusal to

order appraisal would "den[y] the development of proof going to the heart of a party's case and cannot be remedied by appeal")). Because we have concluded that the appraisal provision has not been waived by relator, we hold that relator is entitled to mandamus relief on this issue.[6] Accordingly, this issue is sustained, and we direct the trial court to grant relator's motion to compel appraisal.

## IV. THE DISCOVERY DISPUTE

In its second issue, relator complains about the Andersons' discovery requests. Specifically, relator contends that the "trial court erred in compelling responses to this discovery that was overly broad, unduly burdensome, and abusive on its face" and that other courts have held that discovery requests that are substantially similar to those in this case to be overbroad. The Andersons counter that the trial court did not abuse its discretion in refusing relator's global objections and requiring relator to answer or object to each interrogatory and request for production separately.

---

[6] We acknowledge that, in the trial court, relator argued that this case should be abated during the appraisal process. The trial court denied abatement. In their prayer, relator does not request that the case be abated for appraisal. Nevertheless, we have found instances where cases were abated until conditions precedent in an insurance policy were satisfied. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 565 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (citing *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 735 (Tex. App.—Houston [14th Dist.] 2003, no pet.)); *see Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 451 (Tex. App.—Amarillo 1999, orig. proceeding) (concluding that the insurer was "clearly entitled to have the appraisal procedure followed and the underlying suit abated until the completion of that procedure"); *In re Foremost County Mut. Ins. Co.*, 172 S.W.3d 128, 135 (Tex. App.—Beaumont 2005, orig. proceeding) (relying on *In re Prudential* to grant mandamus relief and order abatement of the case where the insured failed to comply with a condition precedent requiring the insured to submit to an examination under oath). However, in *Universal Underwriters*, the supreme court noted that: "The trial court's failure to grant the motion to abate is not subject to mandamus, and the proceedings need not be abated while the appraisal goes forward." 2011 Tex. LEXIS 357, at *24 n.5 (citing *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002)). Therefore, based on the *Universal Underwriters* case, it appears as if relator would not have been entitled to an abatement of the case so that the appraisal process can occur even if it had requested abatement in its petition for writ of mandamus. *See id.*

As the party seeking relief, relator has the burden of providing this Court with a record sufficient to establish its right to mandamus relief. *See Walker*, 827 S.W.2d at 837; *see also In re Rendon*, No. 04-07-00742-CV, 2007 Tex. App. LEXIS 8970, at *2 (Tex. App.—San Antonio Nov. 14, 2007, orig. proceeding) (mem. op.) (per curiam). Mandamus will not lie absent a ruling by the trial court that is being challenged. *See* TEX. R. APP. P. 52.3(k)(1)(A) (requiring that the appendix contain a certified or sworn copy of any order complained of, or any other document showing the matter complained of in the mandamus petition); *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex. 1990) (stating that for mandamus to lie, the respondent "must have explicitly denied motions intended to compel the deposition"); *see also In re S. Ins. Co.*, No. 14-11-00604-CV, 2011 Tex. App. LEXIS 6678, at *1 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, orig. proceeding) (mem. op.) (per curiam); *In re Rendon*, 2007 Tex. App. LEXIS 8970, at *2 (denying mandamus because the "record submitted by Rendon is devoid of any discovery orders or rulings made by the trial court"); *In re Baldridge*, No. 14-06-00647-CV, 2006 Tex. App. LEXIS 6824, at *1 (Tex. App.—Houston [14th Dist.] Aug. 1, 2006, orig. proceeding) (mem. op.) (per curiam) (denying mandamus because relators failed to provide the court of appeals a written order). However, mandamus relief may be based on an oral ruling only if the ruling is a "clear, specific, and enforceable order that is adequately shown by the record." *See In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding); *see also In re S. Ins. Co.*, 2011 Tex. App. LEXIS 6678, at *2.

Here, relator tried to avoid answering the Andersons' discovery by simply arguing that it had provided the Andersons with the entire claim file. In any event, relator has not directed us to any written or oral ruling where the trial court overruled relator's objections and ordered it to produce specific pieces of information. At the June 15, 2011 hearing, it appears as if the trial court ordered relator to provide specific objections or answers to each and every interrogatory and request for production rather than allowing relator to lodge generic, global objections. The trial court's "oral ruling" does not clearly and specifically compel "responses to discovery without any limitation on relevance, burdensome, or abusiveness." Because we do not have a clear and specific ruling from the trial court as to particular portions of the Andersons' discovery requests, we cannot say that, based on the current state of the record, that relator has established its entitlement to mandamus relief with respect to its discovery issue. *See* TEX. R. APP. P. 52.3(k)(1)(A); *Axelson, Inc.*, 798 S.W.2d at 556; *see also In re S. Ins. Co.*, 2011 Tex. App. LEXIS 6678, at *1; *In re Rendon*, 2007 Tex. App. LEXIS 8970, at *2; *In re Baldridge*, 2006 Tex. App. LEXIS 6824, at *1.

And, to the extent that an argument can be made that the trial court's purported oral ruling with regard to the discovery dispute was clear and specific enough to warrant further analysis, we note that the trial court has broad discretion to schedule and define the scope of discovery in cases, *see In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding), and that the trial court's statements appear to only require relator to provide responses to the discovery in compliance with the rules. *See* TEX. R. CIV. P. 193.1, 193.2, 196.2(b) (providing that parties must respond to discovery

requests and that objections must be specific to the request made and must be made in good faith). Thus, we cannot say that relator has established a clear abuse of discretion on the part of the trial court with respect to the discovery dispute. Accordingly, we overrule relator's second issue and deny the portion of relator's petition for writ of mandamus pertaining to discovery.

## V. CONCLUSION

In sum, we conditionally grant the petition for writ of mandamus with respect to the appraisal issue. The portion of the petition that corresponds to relator's discovery issue is denied. We are confident the trial court will vacate its order denying appraisal and proceed in compliance with this opinion. The writ will issue only if the trial court fails to take appropriate action in accordance with this opinion. The stay of proceedings in the trial court is lifted.


AL SCOGGINS
Justice


Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
Conditionally granted, in part, denied, in part
Opinion delivered and filed October 12, 2011
[OT06]