# IN THE SUPREME COURT OF TEXAS

No. 17-1048

OSCAR ORTIZ, PETITIONER,

v.

STATE FARM LLOYDS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

**Argued February 20, 2019**

JUSTICE LEHRMANN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE BOYD, JUSTICE DEVINE, JUSTICE BROWN, JUSTICE BLACKLOCK, and JUSTICE BUSBY joined as to Parts I, II, III(A), III(B), and III(C), and in which JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE DEVINE, and JUSTICE BUSBY joined as to Part III(D).

CHIEF JUSTICE HECHT filed an opinion concurring in part and dissenting in part, in which JUSTICE BROWN and JUSTICE BLACKLOCK joined.

JUSTICE BOYD filed an opinion concurring in part and dissenting in part.

We are asked in this case to determine the effect of an insurer's payment of an appraisal award on an insured's claims for breach of contract, bad faith insurance practices, and violations of the Texas Prompt Payment of Claims Act. We hold that the insurer's payment of the award bars the insured's breach of contract claim premised on failure to pay the amount of the covered loss. We further hold that the payment bars the insured's common law and statutory bad faith claims to the extent the only actual damages sought are lost policy benefits. Finally, in

accordance with our contemporaneously issued opinion in *Barbara Technologies Corp. v. State Farm Lloyds*, ___ S.W.3d ___ (Tex. 2019), we hold that the insured may proceed on his claim under the Prompt Payment Act. Accordingly, we affirm the court of appeals' judgment in part and reverse it in part.

## I. Background

Oscar Ortiz had a homeowners insurance policy with State Farm Lloyds and submitted a policy claim to State Farm for wind and hail damage to his home. State Farm sent an adjuster to inspect the property, and the adjuster estimated the amount of the damage caused by wind or hail to be $732.53, which was below the policy's $1,000 deductible. The adjuster "observed additional damage [that he concluded was] not caused by hail" and thus was not covered by the policy. In response to State Farm's request that Ortiz forward any estimates "related to this loss that exceed your deductible," Ortiz sent State Farm an estimate he received from a public adjuster valuing the loss at $23,525.99. State Farm conducted a second inspection with the public adjuster present and revised the damage estimate to $973.94, again concluding the damage amount did not exceed the deductible.

Approximately six weeks after being notified of the results of the second inspection,[1] Ortiz sued State Farm for breach of contract, violations of the Prompt Payment Act,[2] and

---

[1] The damage to the home occurred on November 22, 2014. State Farm conducted its first inspection on December 9 and notified Ortiz of the results the next day. State Farm's second inspection was initially scheduled for February 4, 2015, but was postponed to February 25 because the public adjuster's representative did not show up for the first appointment. State Farm notified Ortiz of the results of the second inspection on March 3, and Ortiz filed suit on April 14.

[2] Ortiz did not expressly allege in his petition that State Farm violated the Prompt Payment Act, which is codified as Texas Insurance Code chapter 542. *See* TEX. INS. CODE §§ 542.051–.061. However, Ortiz did allege that he was entitled to 18% statutory interest, which reflects the statutory interest rate for violations of that Act. *See id.* § 542.060(a). Ortiz also filed a "No Evidence Motion for Partial Summary Judgment"—which the trial court denied—arguing that no evidence supported State Farm's assertion that it was not liable for penalties under the

2

statutory and common law bad faith insurance practices.[3] State Farm answered and, approximately two months later, demanded an appraisal pursuant to the parties' insurance policy, which provides in pertinent part:

> **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. . . . The two appraisers shall then select a competent, impartial umpire. . . . The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to [State Farm], the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by [Ortiz] and [State Farm].

Ortiz objected, arguing that State Farm had waived its right to appraisal by waiting too long to demand it. State Farm filed a motion to compel appraisal, which the trial court granted. The appraisal award set the replacement cost of the loss at $9,447.52 and the actual cash value at $5,243.93. State Farm paid the award, minus the deductible, approximately seven business days after receiving it.[4] State Farm then moved for summary judgment, arguing that its payment of the appraisal award "resolves and disposes of all claims in this lawsuit." The trial court initially denied the motion, but on reconsideration granted it and rendered a final judgment in State Farm's favor on all claims. Ortiz appealed.

---

Prompt Payment Act. Finally, State Farm argued in its own motion for summary judgment that it was entitled to summary judgment on Ortiz's claim under chapter 542, and Ortiz specifically addressed the claim in his response to the motion.

[3] Ortiz's live pleading also includes claims for negligent misrepresentation, money had and received, negligence, fraud, and conspiracy to commit fraud. Those claims are not at issue on appeal.

[4] State Farm issued payment on December 30, 2015. According to the cover letter accompanying the check, State Farm received a copy of the award on December 17.

3

Relying principally on its previous decision in *Garcia v. State Farm Lloyds*, 514 S.W.3d 257 (Tex. App.—San Antonio 2016, pet. denied), the court of appeals affirmed. 568 S.W.3d 156, 160 (Tex. App.—San Antonio 2017) (mem. op.). The court held that, absent a ground for setting aside an appraisal award, an insurer's timely payment of the award forecloses liability for breach of contract. *Id.* As to the bad faith claims, the court held that Ortiz presented no evidence that State Farm failed to timely investigate or committed an act "so extreme that it caused injury independent of [his] policy claim." *Id.* (citing *Garcia*, 514 S.W.3d at 278) (alteration in original). The court also concluded that our recent opinion in *USAA Texas Lloyds v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), in which we held that the absence of a breach of contract finding does not bar a bad faith claim against an insurer, has no bearing on either *Garcia*'s viability or State Farm's entitlement to summary judgment in this case. 568 S.W.3d at 159–60. The court of appeals did not specifically address Ortiz's claim under the Prompt Payment Act. We granted Ortiz's petition for review.[5]

## II. Standard of Review

A trial court's order granting summary judgment is reviewed de novo. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). "When reviewing a

[5] Amicus briefs were submitted in support of both parties. We received two briefs in support of State Farm, one from Central Mutual Insurance Company and one from Insurance Counsel of Texas, National Association of Mutual Insurance Companies, and American Property Casualty Insurance Association. We received a brief in support of Ortiz from Texas Automobile Dealers Association, Independent Bankers Association of Texas, Texas Hospital Association, Texas Organization of Rural and Community Hospitals, Texas Independent Automobile Dealers Association, Texas Hotel & Lodging Association, Texas Association of Community Schools, and The Texas League of Community Charter Schools.

summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citations omitted).

### III. Analysis

### A. Appraisal

Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011). Unlike arbitration, which "determines the rights and liabilities of the parties, appraisal merely 'binds the parties to have the extent or amount of the loss determined in a particular way.'" *In re Allstate Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888)). We have lauded the appraisal process as an efficient and less costly alternative to litigation, requiring "no lawsuits, no pleadings, no subpoenas, and no hearings." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009).

Although a party may waive its contractual right to an appraisal, it does not do so merely by failing to demand it before suit is filed. *See In re Universal Underwriters*, 345 S.W.3d at 410. Rather, waiver in this context occurs when the party seeking appraisal fails to demand it within a reasonable time after the parties reach an impasse on the amount of the loss, if the failure prejudices the opposing party. *Id.* at 412. We have recognized the inherent difficulty of demonstrating prejudice when a policy allows both parties the same opportunity to demand

5

appraisal,[6] opining that appraisal "could short-circuit potential litigation and should be pursued before resorting to the courts." *Id.*

In this case, State Farm demanded an appraisal after Ortiz filed suit, and Ortiz contended in the trial court that State Farm waived its right to appraisal by failing to demand it in a reasonable time. The trial court rejected that challenge, and Ortiz does not argue the issue on appeal or otherwise seek to set aside the appraisal award. *See Johnson*, 290 S.W.3d at 888 (noting that appraisal provisions are valid absent fraud, accident, or mistake (citing *Scottish Union*, 8 S.W. at 631)). Nor does he dispute State Farm's full payment of the award. We are asked only to decide the effect of that award and payment on Ortiz's claims for breach of contract, bad faith, and violations of the Prompt Payment Act.

## B. Breach of Contract

Ortiz's breach of contract claim is premised on the fact that the appraisal award valued the covered loss in an amount greater than State Farm initially assessed. Essentially, Ortiz asserts that, by paying him the proper amount only after the appraisal award was issued, State Farm used the appraisal provision to "excuse [its] failure to comply with its other contractual duties to timely pay its policyholders what they are entitled to under the policy." Ortiz relies heavily on *Allstate*, in which we considered whether the trial court had abused its discretion in denying the insurer's motion to compel appraisal under an auto policy. 85 S.W.3d at 195. In granting mandamus relief to the insurer, we noted:

> [I]f the appraisal determines that the vehicle's full value is what the insurance company offered, there would be no breach of contract. Accordingly, at a

---

[6] Amici note that some insurers have begun using unilateral appraisal clauses, incentivizing those insurers to ignore disagreements about the amount of the loss and force the insured to file suit to resolve the dispute. Such a unilateral appraisal clause is not at issue here.

6

> minimum, denying the appraisals will vitiate the defendants' ability to defend the breach of contract claim. Because the appraisals go to the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims.

*Id.* at 196; *see also In re Universal Underwriters*, 345 S.W.3d at 412 (quoting *Allstate*). Ortiz extrapolates from this language that if an appraisal award is higher than the amount the insurer offered, then the insurer necessarily breached the policy.

The courts of appeals have unanimously rejected this argument and held that an insurer's payment of an appraisal award in the face of similar allegations of pre-appraisal underpayment forecloses liability on a breach of contract claim.[7] We agree, as Ortiz's arguments ignore the language, purpose, and effect of appraisal provisions.

As explained, appraisal awards do not serve to establish a party's liability (or lack thereof). *In re Allstate Ins. Co.*, 85 S.W.3d at 195. Rather, they contractually resolve a particular type of dispute among insurers and insureds: the amount of the covered loss. *Id.* Thus, an enforceable appraisal award, like the one issued in this case, is binding on the parties with respect to that amount. *See State Farm Lloyds*, 290 S.W.3d at 890 (noting that "[t]he scope of appraisal is damages, not liability"); *see also Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 253 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) ("The effect of an appraisal decision is to estop one party from contesting the issue of the value of damages in a suit on the insurance contract."). It simply does not follow that an appraisal award demonstrates that an insurer breached by failing to pay the covered loss. If it did, insureds would be incentivized to

---

[7] *See, e.g.*, *Biasatti v. GuideOne Nat'l Ins. Co.*, 560 S.W.3d 739, 742–43 (Tex. App.—Amarillo 2018, pet. filed); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017, pet. pending); *Garcia*, 514 S.W.3d at 273–74; *Anderson v. Am. Risk Ins. Co.*, No. 01-15-00257-CV, 2016 WL 3438243, at *4–5 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (mem. op.); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343–44 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied) (mem. op.).

7

sue for breach every time an appraisal yields a higher amount than the insurer's estimate (regardless of whether the insurer pays the award), thereby encouraging litigation rather than "short-circuit[ing]" it as intended. *In re Universal Underwriters*, 345 S.W.3d at 412.

Moreover, the contractual nature of the appraisal process is significant. We recently reiterated that "an 'insurance policy is a contract' that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed." *Menchaca*, 545 S.W.3d at 488 (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). Having invoked the agreed procedure for determining the amount of loss, and having paid that binding amount, State Farm complied with its obligations under the policy. *See Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied) (mem. op.) ("The [insureds] may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal."). As Ortiz has failed to identify any breach other than the failure to timely pay the amount of the covered loss under the policy, State Farm was entitled to summary judgment on the breach of contract claim.

### C. Bad Faith Claims

The Texas Insurance Code authorizes a private action against an insurer that commits "an unfair or deceptive act or practice in the business of insurance." TEX. INS. CODE § 541.151. Ortiz alleged in his petition that State Farm engaged in various statutorily prohibited acts, including wrongfully denying his claim, failing to settle the claim in good faith, and failing to conduct a reasonable investigation. *See id.* § 541.060(a)(2)–(4), (7). Ortiz also alleged that State Farm violated the common law duty of good faith and fair dealing, which requires an insurer "to

8

deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); *see also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) (holding that an insurer breaches this common law duty if it denies or unreasonably delays payment of a claim when it "knew or should have known that it was reasonably clear that the claim was covered").

The only facts Ortiz alleged in support of these claims in his petition were that he "submitted a claim related to this covered loss [the wind and hail damage to his home] and [State Farm] found a small amount of damage below [Ortiz's] deductible and denied the remainder of the claim." In his response to State Farm's motion for summary judgment, Ortiz added that the discrepancy between State Farm's estimate and the appraisal award constituted evidence that State Farm intentionally undervalued the claim. State Farm maintains that, because Ortiz has received all the benefits to which he is entitled under the policy and has presented no evidence of an independent injury, the trial court properly granted summary judgment on Ortiz's bad faith claims.[8]

As we recently reaffirmed in *Menchaca*, an "insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." 545 S.W.3d at 489.[9] We further clarified that although a breach of contract finding is not a prerequisite to recovery for a statutory violation that "caused" the insured's damages, the "general rule" is that "an insured cannot recover policy benefits as

---

[8] State Farm did not file a no-evidence summary judgment motion on Ortiz's bad faith claims, and the record contains no indication that the parties have engaged in any discovery on those claims. Thus, any comment on or consideration of the merits of Ortiz's allegations that State Farm acted in bad faith would be premature and improper.

[9] Of course, these extra-contractual duties arise only because of the contractual relationship between insurer and insured.

actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Id.* at 495. The corollary to this rule is that "an insured who establishes a right to benefits under the policy can recover those benefits as actual damages resulting from a statutory violation." *Id.* at 497; *see also id.* at 496 ("If an insurer's wrongful denial of a valid claim for benefits results from or constitutes a statutory violation, the resulting damages will necessarily include 'at least the amount of policy benefits wrongfully withheld.'" (quoting *Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988))). And regardless of whether an insured is entitled to benefits under the policy, he may recover damages for a statutory violation that causes an injury "independent from the loss of the benefits." *Id.* at 499–500.[10]

Here, the issue is not whether Ortiz had a "right to benefits" under his policy. Assuming he did, State Farm argues that, in light of the appraisal payment, Ortiz has received all the policy benefits to which he is entitled; thus, no outstanding benefits remain to be recovered as damages for an alleged statutory violation. Ortiz maintains that, in addition to policy benefits, he is entitled to recover the "fees and expenses related to the pursuit of [those] benefits" necessitated by State Farm's unreasonable investigation of his claim. Specifically, Ortiz argues he is entitled

---

[10] We explained in *Menchaca*:

There are two aspects to this independent-injury rule. The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. . . . The second . . . is that an insurer's statutory violation does not permit the insured to recover any damages *beyond* policy benefits unless the violation causes an injury that is independent from the loss of the benefits.

545 S.W.3d at 499–500 (emphasis added).

10

to recover his attorney's fees and costs incurred in this suit. *See* TEX. INS. CODE § 541.152(a)(1). He also argues he is entitled to pursue treble damages at trial.[11] *See id.* § 541.152(b).

We cannot reconcile Ortiz's position with either Texas law on the nature of attorney's fees or the language of chapter 541, which (1) entitles a prevailing plaintiff to recover "actual damages, *plus* court costs and reasonable and necessary attorney's fees," *id.* § 541.152(a)(1) (emphasis added), and (2) allows an award of up to "three times the amount of actual damages" if the trier of fact finds the defendant acted knowingly, *id.* § 541.152(b). By the statute's terms, any award of attorney's fees or treble damages is premised on an award of underlying "actual damages." However, the only "actual damages" Ortiz seeks are the policy benefits wrongfully withheld, and those benefits have already been paid pursuant to the policy.

To the extent Ortiz contends that the attorney's fees and costs he incurred in prosecuting this suit are part of the "actual damages" he is entitled to recover, we disagree. Texas law is clear that attorney's fees and costs incurred in the prosecution or defense of a claim, although "compensatory in that they help make a claimant whole," are not damages. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013). We explained in *Nalle Plastics* that, consistent with the well-settled "American Rule" that attorney's fees are not recoverable unless authorized by statute, "the Legislature specifically designates when attorney's fees may be recovered and, in doing so, distinguishes between fees and damages." *Id.* at 172. That is exactly what the Legislature has done in chapter 541, which requires that the claimant prevail on the underlying claim *and* recover damages in order to recover attorney's fees. *See* TEX. INS. CODE

---

[11] At oral argument, Ortiz was asked to clarify the damages he seeks under chapter 541. Counsel responded that he is seeking only attorney's fees and treble damages and expressly disclaimed any right to recover appraisal costs or other expenses as damages under chapter 541. We therefore do not address whether such costs are potentially recoverable as actual damages under the statute in the event evidence of bad faith is presented.

§ 541.152(a)(1); *see also Nalle Plastics*, 406 S.W.3d at 172–73 (similarly interpreting Texas Civil Practice and Remedies Code section 38.001, which authorizes a prevailing party to recover attorney's fees "in addition to the amount of a valid [contract] claim"). By the same token, an award of some amount of actual damages is a prerequisite to an additional award of up to three times that amount. TEX. INS. CODE § 541.152(b).

As noted, other than the amount that has already been paid, Ortiz does not seek to recover any "actual damages" he claims were "caused by" State Farm's Insurance Code violations. For example, he does not claim the delay in payment resulting from State Farm's allegedly unreasonable investigation caused additional property damage to his home, nor does he seek either appraisal costs or sums related to pre-appraisal damage assessments. We express no opinion on whether such damages would be "independent from the loss of [policy] benefits" and thus recoverable under *Menchaca* and prior case law. 545 S.W.3d at 500; *see also Stoker*, 903 S.W.2d at 341 (noting that, even in the absence of coverage, an insurer has a duty to timely investigate claims). Because Ortiz seeks no actual damages other than the policy benefits paid in accordance with the policy's appraisal provision, he may not maintain a bad faith claim under either the common law or chapter 541.

## D. Prompt Payment of Claims Act

Chapter 542 of the Insurance Code, known as the Texas Prompt Payment of Claims Act, "imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims." *Barbara Techs. Corp.*, ___ S.W.3d at ___ (citing TEX. INS. CODE § 542.054). The parties dispute whether State Farm's payment of the appraisal award forecloses Ortiz's recovery under that Act. State Farm argues that it does, while Ortiz maintains that

12

appraisal does not "act[] as a King's X prohibiting any damages beyond what is owed under the policy." Both the trial court and the court of appeals agreed with State Farm.

As we hold today in *Barbara Technologies*, an insurer's payment of an appraisal award does not as a matter of law bar an insured's claims under the Prompt Payment Act. Accordingly, we reverse the court of appeals' judgment as to this claim and remand for further proceedings in light of *Barbara Technologies*.

* * * *

For the reasons discussed, the court of appeals correctly affirmed the trial court's summary judgment as to Ortiz's breach of contract and bad faith claims. However, Ortiz is entitled to proceed on his Prompt Payment Act claim in light of our opinion in *Barbara Technologies*. We therefore affirm the court of appeals' judgment in part, reverse it in part, and remand the case to the trial court for further proceedings.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 28, 2019