**Affirmed and Opinion Filed July 30, 2024.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00749-CV

### MICHAEL KNOPP AND SANDRA RYBICKI-KNOPP, Appellants
### V.
### STATE FARM LLOYDS, Appellee

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-04386-2021**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Kennedy
Opinion by Justice Pedersen, III

In this appeal arising from an insurance dispute, appellants complain the trial court erred by granting summary judgment that they take nothing on their claims for breach of contract and violations of the Texas Insurance Code. We affirm the trial court's judgment.

## Background

Appellee State Farm Lloyds insured the home of appellants Michael Knopp and Sandra Rybicki-Knopp. A hail storm damaged the home's roof on March 24, 2019. Appellants submitted a claim to appellee on April 4, 2019.

On April 22, 2019, independent adjuster James L. Ulibarri inspected the roof. In an April 23, 2019 letter to appellants, Ulibarri acknowledged hail damage to roof vents, valley metal, aluminum wall coping, exhaust caps, and rain caps. However, a number of composite roof tiles were not damaged and, therefore, were not covered by the policy due to lack of "accidental direct physical loss." Moreover, tears to other tiles were "not consistent with wind or hail damage" and, therefore, the policy did not cover damage to the torn tiles. Ulibarri's estimate, enclosed with his letter, included $630.24 for labor "to manipulate undamaged composite slate tiles in order to replace valley metal and roof vents." Ulibarri estimated the damage to appellants' roof to be $8,800.71. The total payable amount due to appellants from appellee was $3,525.49, after reductions for depreciation and the policy's deductible. Payment of $3,525.49 was enclosed with Ulibarri's letter. Appellee reserved its defenses.

Appellants disagreed with appellee's coverage decision. Appellee retained an engineer who performed a second inspection of the roof on or about August 23, 2019. In a September 9, 2019 letter to appellants, appellee continued to deny coverage for any damage to the roof tiles. However, appellee enclosed payment of $2,713.30 for additional labor to manipulate undamaged roof tiles. Appellee reserved its policy defenses.

More than a year later, in December 2020, a roofing company sent appellee a letter from the manufacturer of the roof tiles. According to appellee's records, the letter stated the roof tiles are "extremely difficult to repair" and recommended

replacing tiles in areas where the valley metal is to be replaced. An employee of appellee spoke to a person associated with the manufacturer who stated the tiles are easily replaced if damaged and that it did not matter whether such tiles were in a valley or slope area. Subsequently, appellee's employee spoke with persons at two roofing companies. One company reported it frequently repaired roofs like appellants' and that such roofs can be repaired. The other company also stated the tiles can be repaired. Appellee's employee conferred with another person involved in assessing appellants' claims. They agreed no changes to appellee's existing estimate were necessary because "a repair has been included for the roof and an update for additional D&R of shingles in labor has been made in [S]eptember."

Appellants invoked the policy's appraisal clause.[1] Appellee received the appraisal demand December 15, 2020. On January 20, 2021, the appraisers issued

---

[1] Appellants' policy provides in part,

**Appraisal.** If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss will be set by appraisal.

\* \* \*

The appraisers will . . . attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. . . . The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon you and us.

\* \* \*

You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

\* \* \*

–3–

an "award form" stating the monetary amount to replace the roof was $96,195.04 in replacement cost value and $91,475.77 in actual cost value.[2] The award stated it was not a determination of coverage or cause of loss.

On January 28, 2021, appellee received the appraisal award.

On February 9, 2021, appellee informed appellants by letter that it would not pay to replace the roof because damage to the roof's shingles was not caused by hail or wind and, therefore, was not covered by the policy. However, appellee paid $2,550.86 to appellants as a supplemental payment for minor roof repair.

On May 27, 2021, appellants sent a notice letter to appellee. Appellants stated appellee had breached the policy and violated Chapter 541 of the insurance code by refusing in bad faith to pay the appraisal award and had violated Chapter 542 of the insurance code by delaying payment. Appellants stated they had incurred $9,600.00 attorney's fees. Appellants claimed "total damages" of $84,956.25. On July 11, 2021, appellee declined appellants' request for additional payment.

---

Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide: (1) any other questions of fact; (2) questions of law, (3) questions of coverage; (4) other contractual issues . . . .

[2] The policy differentiates payment for (1) actual cash value at the time of loss and (2) replacement cost value. For example, the policy in part provides appellee will pay the cost to repair or replace damaged property "subject to the following:"

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less . . . .

–4–

On August 11, 2021, appellants filed this lawsuit against appellee and John Altizer, appellee's adjustor, in district court.[3] Against appellee, appellants alleged breach of contract, statutory bad faith in violation of Chapter 541 of the insurance code, common law bad faith, and failure to promptly pay their claim in violation of Chapter 542 of the insurance code.[4] They also sought declaratory relief.

One day after filing this lawsuit, appellants sent appellee a "demand for relief under the Texas Insurance Code." In it, they repeated that appellee breached the policy and violated the insurance code. Appellants stated market costs of repair had significantly increased since the date of the appraisal award. They attached to their letter an estimate of increased costs prepared by independent adjuster Art Boutin. Appellants asserted $105,044.03 in actual damages, $26,261.01 in attorney's fees, and $23,634.01 in penalties for failure to promptly pay their claim. The asserted damages totaled $154.939.95.

On September 7, 2021, appellee replied to appellants by letter that it had handled appellants' claim promptly and in good faith. It declined appellants' demand for payment. Also on September 7, 2021, appellee filed its answer in district court.

On December 30, 2021, appellee paid appellants the $77,686.12 balance of the actual cash value set by the appraisal award. Additionally, appellee paid

---

[3] Against Altizer, appellants alleged statutory bad faith and violation of the Texas Deceptive Trade Practices-Consumer Protection Act. Appellants subsequently filed a notice of nonsuit with prejudice of all their claims against Altizer.

[4] Appellants do not complain in this Court about the trial court's judgment dismissing their claim for common law bad faith or for declaratory relief.

appellants $20,432.21 for "potential" statutory interest pursuant to Chapter 542 of the insurance code. Moreover, appellee paid $15,000.00 in attorney's fees related to appellants' claim for alleged violation of Chapter 542 of the insurance code. Additionally, appellee stated it would not count the time between April 22, 2019, and December 30, 2021—the time from Ulibarri's inspection of appellants' roof to appellee's payment of the appraisal award to appellants—toward the policy's two-year replacement-cost-value period. Appellee's letter stated its position regarding coverage "remains unchanged[.]"

On March 18, 2022, appellee filed a traditional motion for summary judgment. Appellee argued its payment of the appraisal award disposed of appellants' claims for breach of contract and bad faith. Appellee argued it was entitled to summary judgment for appellants' claims that appellee violated Chapter 542 of the insurance code because it had paid all possible statutory interest authorized by Chapter 542. Moreover, appellee argued that Chapter 542A of the insurance code bars appellants from recovering statutory attorney's fees otherwise authorized by Chapter 542. Additionally, appellee objected to admission of Art Boutin's report concerning increased costs of repair to the roof. In response, appellants argued appellee was not entitled to summary judgment on its claims for breach of contract and violation of Chapter 541 of the insurance code because, in part, appellee did not timely pay the appraisal award. They argued that appellee's payment of the appraisal award did not preclude their claim for violation of Chapter

542 of the insurance code. They also argued appellee's objection to Boutin's report concerning increased costs of repair should be overruled.

The trial court sustained appellee's objection to Boutin's report concerning increased costs of repair. It entered summary judgment that appellants take nothing on their claims against appellee.

Appellants filed a notice of appeal. This appeal followed.

## Summary Judgment Standard of Review

We review a grant of a summary judgment de novo. *See Herrera v. Dallas Indep. Sch. Dist.*, No. 05-22-00384-CV, 2023 WL 4101358, at *3 (Tex. App.—Dallas June 21, 2023, pet. denied) (mem. op.) (citing *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019)). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact. *See Herrera*, 2023 WL 4101358, at *3 (citing *Lujan*, 555 S.W.3d at 84). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See id.* (citing *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019)).

**Breach of Contract**

The Parties' Arguments

In their first issue, appellants complain the trial court erred in granting summary judgment against them on their claim for breach of contract. Appellants claim for breach of contract "exclusively concerns State Farm's actions *after* it received the award." (Emphasis in original.) Appellants argue appellee breached or "repudiated" the contract by not timely paying them the appraisal award as they demanded.

Conversely, appellee argues it was entitled to summary judgment because no breach occurred. Appellee argued the policy provides that the appraisal award is binding insofar as the amount of damage but not as to issues of coverage or causation. It argued it paid the appraisal award and that appellants thereby received all policy benefits pursuant to the policy. Therefore, it argued, appellants' claim for breach of the policy fails as a matter of law.

Rules of Contract Construction and Applicable Law

We construe unambiguous contracts under a de novo standard of review. *See, e.g.*, *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (citations omitted). We must give effect to the parties' intentions, as expressed in their agreement. *See, e.g.*, *Murphy Expl. & Prod. Co.—USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018) (citation omitted). Because insurance policies are contracts, we construe them according to general rules of contract construction to ascertain the parties' intent.

*See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. *See id*. We give contract language its plain, grammatical meaning unless it would defeat the parties' intentions. *See, e.g.*, *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 343 n.41 (Tex. 2023).

<u>Analysis</u>

Appellants' argument in this Court is specific. They argue appellee was obligated to pay the appraisal award and that appellee breached or "repudiated" the policy when appellee did not pay the award on demand.

In analyzing appellants' argument, we first address appraisal awards and their legal effect. Appellee's summary-judgment evidence included appellants' policy and its appraisal provisions. The policy provides, "You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute." The policy states the appraisal award determines the monetary amount of loss in dispute. It also states the appraisers and appraisal umpire are without authority to decide coverage or other contract issues.

Moreover, the appraisal award contained a disclaimer stating,

**APPRAISAL DISCLAIMER: Appraisal panel makes no determination concerning coverage or cause of loss and understands that these decisions remain the sole responsibility of the carrier.**

(Bold typeface in original.)

Similarly, Texas law recognizes appraisal awards do not establish a party's liability or lack thereof. *See Ortiz*, 589 S.W.3d at 132 (citing *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding)). Rather, appraisal awards contractually resolve a particular type of dispute among insurers and insureds: the amount of loss. *See id.* (citing *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d at 195). Thus, an enforceable appraisal award, like the one issued in this case, is binding on the parties with respect to that amount. *See id.* (first quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009) (noting that "[t]he scope of appraisal is damages, not liability"); and then quoting *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 253 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) ("The effect of an appraisal decision is to estop one party from contesting the issue of the value of damages in a suit on the insurance contract.").

In response to appellant's assertions, appellee argues that—based on policy provisions and Texas law—the appraisal award determined the amount of roof damage but did not establish "liability or right to policy benefits" and "is not a determination as to the insurer's liability." It argues, "There is no contractual obligation to pay an appraisal award." We agree with appellee's argument.

Accordingly, based on the policy's provisions, the award's terms, and the Texas law cited above, we disagree with appellants' basic underlying premise that appellee was obligated to pay to appellants the appraisal award on demand. *See also*

–10–

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 824 n.12 (Tex. 2019),[5] *superseded by statute on other grounds as stated in*, *Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 794 (Tex. 2014). Therefore, as a matter of law, appellee did not "repudiate" or breach the policy due to its denial of appellants' demands to pay the appraisal award.

Moreover, appellee argues *Ortiz* disposes of appellants' claim for breach of contract. The supreme court recently stated that in *Ortiz* it "clarified that full payment of an appraisal award *does* discharge the insurer's liability for a claim under the insurance policy." *Rodriguez*, 684 S.W.3d at 794 (emphasis in original); *see Ortiz*, 589 S.W.3d at 129 ("We hold that the insurer's payment of the [appraisal] award bars the insured's breach of the contract claim premised on failure to pay the amount of the covered loss."). In this case, appellee demonstrated as a matter of law that it paid the actual cash value of the covered loss—measured at the time of loss, as the policy provides—pursuant to the award. Additionally, the only possible benefits available to appellants were for actual cash value at the time of the loss because there was no evidence that appellants had actually undertaken necessary

---

[5]   [I]f a contractual appraisal provision such as the one in this case is invoked after the insurer has received all information requested from the claimant, conducted an investigation, and rejected the claim, *the insurer may choose to: (1) refuse to pay the appraisal amount and maintain its denial of liability for the claim*; (2) pay the appraisal amount without accepting liability; or (3) accept the claim, essentially admitting it was incorrect to deny liability initially, and then pay the claim in accordance with the appraisal amount.

*Id.* (emphasis added).

repairs.[6] Thus, appellee's payment of the award bars appellants' claim for breach of contract premised on failure to pay the amount of the covered loss. *See Ortiz*, 589 S.W.3d at 129.

Nonetheless, appellants argue the present lawsuit is distinguishable from *Ortiz* because,

> State Farm accepted liability for the appraisal award in Ortiz and promptly paid Ortiz what it owed within seven business days of receiving the award. Here—by stark contrast—State Farm chose *not* to pay the award, repudiated its obligation to pay the award thrice, and waited until the Knopps had no choice but to file a lawsuit to get State Farm to finally pay the amount of the award.

(Emphasis in original.) Appellants' attempt to distinguish *Ortiz* from this case, quoted above, is premised on their underlying assertion that appellee "repudiated its obligation to pay the award." However, we concluded above that appellee was not obligated to pay the award on appellants' demand. Consequently, we are unconvinced that *Ortiz* should be distinguished from this case based on appellants' assertion that appellee "repudiated its obligation to pay the award." Additionally, appellants rely on two supreme court opinions in support of their timeliness argument. However, neither opinion involves a claim for breach of contract. *See Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 653 (Tex. 2021) (addressing Chapter 542 of the Texas Insurance Code); *Barbara Techs. Corp.*, 589 S.W.3d at 808 (same).

---

[6] *See supra* note 2 (policy description of benefits for (1) actual cash value at the time of the loss and (2) replacement cost value for covered amounts actually and necessarily spent to repair or replace the damaged part of the property).

Moreover, we look to the policy to determine whether its provisions support appellants' argument that appellee's payment of the award was untimely. *See Bustamante v. State Farm Lloyds*, No. 5:15-cv-184, 2017 WL 6210889, at \*2 (S.D. Tex. Apr. 24, 2017) ("The rules governing the timeliness of an appraisal award payment are determined by the intent of the parties as manifested in the contract."). The supreme court has emphasized the contractual nature of the appraisal process. *See Ortiz*, 599 S.W.3d at 133 ("[T]he contractual nature of the appraisal process is significant."). "We recently reiterated that an insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed." *Id.* (internal quotation marks omitted) (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018)). In this lawsuit, appellants fail to identify a policy provision to substantiate their assertion that appellee's payment of the appraisal award was untimely. However, the policy provides, "You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute." Applying the rules of contract construction described above, we conclude the policy expresses the parties' intent that the policy did not require appellee to pay the appraisal award on appellants' demand—or at any time. *See Barbara Techs. Corp.*, 589 S.W.3d at 824 n.12 (under the appraisal clause, the insurer had the option of refusing to pay the appraisal amount and maintaining its

denial of liability for the claim). We reject appellants' arguments that appellee's payment of the appraisal award was untimely.

Therefore, we conclude appellee proved as a matter of law that it did not breach the policy. Moreover, appellants failed to raise a fact issue to the contrary. Consequently, the trial court did not err in granting summary judgment against appellants on their claim for breach of contract.

We overrule appellants' first issue.

## Statutory Bad Faith

Appellants complain in their second issue that the trial court erred in granting summary judgment against them on their claim for bad faith in violation of § 541.060 of the Texas Insurance Code. *See* TEX. INS. CODE ANN. § 541.060. They allege appellee knowingly violated § 541.060 by,

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- refusing to pay Plaintiffs' claim without conducting a reasonable investigation; and/or

- misrepresenting to Plaintiffs a material fact or policy provision relating to the coverage at issue.

*See* INS. §§ 541.060(a)(1), (a)(2)(A), (a)(7). Specifically, appellants argue appellee is liable for "post-appraisal breach of contract or post-appraisal bad faith where it received the appraisal award and refused to pay it until after the insured was forced to file a lawsuit." Similarly, they argue, "By refusing to pay the appraisal award and

–14–

forcing the Knopps to sue, State Farm both breached the contract and committed post-appraisal bad faith." In response, appellee relies on *Ortiz*, in which the supreme court stated, "We . . . hold that the [appraisal award] payment bars the insured's common law and statutory bad faith claims to the extent the only actual damages sought are lost policy benefits." *Ortiz*, 589 S.W.3d at 129.

We conclude *Ortiz* forecloses appellants' claim for statutory bad faith. As we discussed above, the only actual damages appellants seek are for lost policy benefits which appellee paid when it paid the award. *See id.* Consequently, *Ortiz* also provides appellants may not recover (1) court costs and reasonable and necessary attorney's fees or (2) an award of up to three times the amount of actual damages if the trier of fact finds appellee acted knowingly. *See* INS. §§ 541.152(a)(1), 541.152(b); *Ortiz*, 589 S.W.3d at 135-36 ("By the statute's [INS. § 541.152's] terms, any award of attorney's fees or treble damages is premised on an award of underlying 'actual damages.' However, the only 'actual damages' Ortiz seeks are the policy benefits wrongfully withheld, and those benefits have already been paid pursuant to the policy.").

Nonetheless, appellants argue they may recover on their claim for statutory bad faith because they suffered "independent injury" due to increased market cost of repair since the date of the award. The supreme court has recognized the possibility that in denying a claim, an insurer may commit some act—an act "so extreme"—that would cause injury independent of the policy claim. *See Menchaca*,

545 S.W.3d at 499. If an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. *See id.* Thus, an insured can recover actual damages caused by the insurer's bad-faith conduct if the damages are separate from and differ from benefits under the contract. *See id.* This aspect of the independent-injury rule applies only if the damages are truly independent of the insured's right to receive policy benefits. *See id.* at 499–500. Moreover, the supreme court stated in 2018 that a statutory violation that could cause an independent-injury claim would be rare, "and we have yet to encounter one." *Id.* at 500 (quoting *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521-22 (5th Cir. 2013) ("The *Stoker* language [concerning possible independent injuries] has frequently been discussed, but in seventeen years since the decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim . . . )).

Appellant's asserted independent injury is increased cost of repair. Appellants' policy provides appellee will pay an amount "not to exceed the *cost* to repair or replace the damaged part of the property[.]" (Emphasis added.) The policy provides for actual cash value for cost of repairs and repair cost value for actual and necessary costs of repair. Consequently, costs of repair for appellants' claimed damage—whether increased or not—are not separate from or different from benefits under the contract and, thus, do not constitute independent injury. *See id.* at 499. We

–16–

conclude there is no evidence to demonstrate that this lawsuit presents the "rare" successful independent-injury claim. *Id.* at 500.

Moreover, we conclude the trial court did not err by entering summary judgment for appellee on appellants' claim for statutory bad faith.

We overrule appellants' second issue.

### Prompt Payment of Claims Act

Appellants complain in their third issue that the trial court erred in granting summary judgment against them on their claim for violation of Texas Insurance Code, Chapter 542, Subchapter B, the "Prompt Payment of Claims Act" ("PPCA"). *See* INS. §§ 542.051–.061.[7]

Chapter 542 of the insurance code imposes deadlines for the payment of certain insurance claims. *See* INS. §§ 542.057–.059. Failure to meet these deadlines results in statutory liability for interest and reasonable and necessary attorney's fees. *See id.* § 542.060.

In 2017, the legislature added Chapter 542A to the insurance code. *See* INS. §§ 542A.001–.007. Chapter 542A governs first-party claims by an insured that arise "from damage to or loss of covered property caused, wholly or partly, by forces of nature, including . . . hail, wind, . . . or a rainstorm." *Id.* § 542A.001(2)(C). When it applies, Chapter 542A changes the rules applicable to litigation of certain statutory

---

[7] Subchapter B of Chapter 542 is sometimes referred to as the "Prompt Payment of Claims Act." *See, e.g., Lazos v. State Farm Lloyds*, 601 S.W.3d 783, 784 (Tex. 2020) (per curiam).

and common-law claims against insurers, including claims asserting violations of Chapter 542's prompt-payment requirements. *See Rodriguez*, 684 S.W.3d at 792 (citing INS. § 542A.002). Chapter 542A limits recovery of attorney's fees. *See id.* (citing INS. § 542A.007).

After the parties filed briefs in this Court, the supreme court issued *Rodriguez*, 684 S.W.3d 789. *Rodriguez* answered the following certified question from the U.S. Court of Appeals for the Fifth Circuit: "In an action under Chapter 542A of the Texas Prompt Payment of Claims Act, does an insurer's payment of the full appraisal award plus any possible statutory interest preclude recovery of attorney's fees?" *Id.* at 790. The supreme court held, "[T]he answer is yes." *Id.*

Subsequent to issuance of *Rodriguez*, appellants filed a supplemental letter brief and notice of new authority in this Court. In it, appellants concede "the effect of *Rodriguez*" is that this Court can affirm the summary judgment on their claim for recovery of attorney's fees under Chapter 542A. We agree.

Moreover, we conclude that appellants' concession that *Rodriguez* bars their recovery of attorney's fees impliedly concedes that appellee paid them the full appraisal award plus any possible interest. *See id.* (holding full payment of full appraisal award plus any possible statutory interest precludes recovery of attorney's fees under Chapter 542A). Regardless, appellee presented summary judgment evidence of (1) appellee's payment to appellants of the appraisal award and (2) a detailed calculation of appellee's payment to appellants of interest that might be

awarded pursuant to the prompt payment of claims act. *See* INS. § 542.060. We conclude appellee proved the payments as a matter of law. Moreover, appellants did not raise a fact issue to the contrary.

Consequently, the trial court did not err in entering summary judgment in favor of appellee on appellants' claim for violation of the prompt payment of claims act.

We overrule appellant's third issue.

### Exclusion of Evidence

In their fourth issue, appellants complain the trial court erred by excluding an "estimate report" of loss prepared by Art Boutin.

The rules of evidence control the admissibility of evidence in summary judgment proceedings; thus, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Est. of Little*, No. 05-18-00704-CV, 2019 WL 3928755, at *5 (Tex. App.—Dallas Aug. 20, 2019, pet. denied) (mem. op.) (citing *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018)). An abuse of discretion occurs when the trial court acts arbitrarily or without reference to any guiding rules and principles. *See id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We set aside the trial court's judgment only if the "erroneous evidentiary ruling probably caused the rendition of an improper judgment." *Id.* (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000)); *see* TEX. R. APP. P. 44.1(a)(1).

Appellants argue the report was relevant to prove increased market costs of repair since the date of the award. They argue such increased costs constitute evidence of independent injury. However, we concluded above the insurance policy and the law preclude appellants from demonstrating independent injury. Accordingly, the trial court's error, if any, in excluding the report that would be offered to prove the precluded independent injury could not have probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Consequently, appellants have not demonstrated reversible error.

We overrule appellants' fourth issue.

## Conclusion

We affirm the trial court's judgment.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

220749F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL KNOPP AND SANDRA RYBICKI-KNOPP, Appellants

No. 05-22-00749-CV     V.

STATE FARM LLOYDS, Appellee

On Appeal from the 471st Judicial District Court, Collin County, Texas
Trial Court Cause No. 471-04386-2021.
Opinion delivered by Justice Pedersen, III. Justices Goldstein and Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee STATE FARM LLOYDS recover its costs of this appeal from appellants MICHAEL KNOPP AND SANDRA RYBICKI-KNOPP.

Judgment entered July 30, 2024